UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL A. RAINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:06-cv-0472-DFH-TAB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Michael A. Raines seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits and disabled widower's insurance benefits. Acting for the Commissioner, an Administrative Law Judge ("ALJ") determined that Mr. Raines was not disabled under the Social Security Act because he retained the residual functional capacity to perform a range of light exertional work. As explained below, the denial of benefits is affirmed because the ALJ's decision complies with the law and is supported by substantial evidence.

---

[1]Michael J. Astrue took office as Commissioner of the Social Security Administration while Mr. Raines' case was pending before the court. Commissioner Astrue is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

*Background*

Mr. Raines was born in 1952.  R. 413.  He was 52 years old at the time of his administrative hearing.  He was classified as "a person closely approaching advanced age" under 20 C.F.R. § 404.1563(d)[2].  Mr. Raines has a general equivalency degree.  R. 413.  He has previously worked as a production technician, a load builder, and a machine operator.  R. 42-43, 436-39.  He alleges that he has been disabled since July 19, 2002 due to low back pain, fibromyalgia, migraine headaches, chest pain, high blood pressure, coronary artery disease, and dizziness.  R. 163-65, 203-12.


On June 27, 2000 Mr. Raines saw Dr. Jon Finley, a neurologist.  R. 292-96. Mr. Raines complained of daily, severe, sharp headaches that often lasted most of the day.  Dr. Finley stated that the most likely diagnosis was "mixed with element of cervicogenic headache" (headaches caused by the cervical spine).  He also stated there was a possible rebound headache component.  R. 293.  Rebound headaches can result when pain medications (analgesics) are taken too frequently to relieve headaches.  Mr. Raines' wife reported that he "eats Tylenol like candy." R. at 292.  Dr. Finley also listed several differential diagnoses, including migraine, analgesia withdrawal, cluster, musculotension, icepick, cervicogenic including myofascial, sinusitis, and dental disease.  (Differential diagnosis is the method of

---

[2]20 C.F.R. § 404.1563(d) states:  "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."

distinguishing between diseases of similar character by comparing their signs and symptoms.)  Dr. Finley also noted that Mr. Raines had pancreatitis with diarrhea. R. 294.

Mr. Raines suffered from lower back pain that radiated into his right leg. An MRI conducted by Dr. Marla Coutz on January 8, 2002 revealed significant posterior osseous and ligamentous hypertrophy (a condition that results in a narrowing of the central spinal canal and the opening between vertebrae) at L4-5, much more marked on the right, with creation of a right lateral recess stenosis compromising the right neural foramen (the compression of spinal nerves exiting the opening between vertebrae).  R. 280.  The MRI also revealed a very mild posterior protrusion of disc material at L4-5 and a mild posterior central and left paracentral disc herniation at L5-S1 with posterior osseous and ligamentous hypertrophy, slightly more marked on the left.  *Id.*

On February 21, 2002 Mr. Raines saw Dr. John Shay of the Indiana Back Center.  R. 401.  Dr. Shay noted that Mr. Raines' prior x-rays and MRI scan revealed some degenerative disease in the lower lumbar region and some subarticular stenosis on the right at L4-5 as well as some facet arthropathy on the right.   Dr. Shay diagnosed him with chronic lumbar syndrome with underlying degenerative disease.  He told Mr. Raines that he should consider a lumber epidural steroid injection.

On March 18, 2002 Mr. Raines saw Dr. Clint Myers.  Dr. Myers issued a consultation report that noted insidious[3] onset of low back pain with some symptoms of spinal stenosis with pain that radiates down the legs.  R. 282-83.  Dr. Myers' report also noted that Mr. Raines was able to heel-and-toe walk without difficulty, there was little or no pain with extension, no pain with flexion, and no motor deficits in either lower extremity.  He noted that the L4 and L5 spinous processes were tender to palpation and that there was tenderness to palpation over the right sacroiliac joint region.  Dr. Myers gave Mr. Raines an epidural steroid injection.

On August 27, 2002 Mr. Raines saw Dr. Shay again.  Neurological evaluation of Mr. Raines' lower extremities revealed no focal motor, sensory, or reflex deficits.  Straight leg raise and hip rotation were negative bilaterally.  R. 284.  Dr. Shay repeated his diagnoses of chronic lumbar syndrome with underlying degenerative disease.  He recommended that Mr. Raines see Dr. Kowlowitz for non-operative treatment of his pain.  Thereafter, on August 30, 2002, Mr. Raines saw Dr. Edward Kowlowitz, who diagnosed him with lumbar internal disc derangement at L4-5 and L5-S1 and lumbar spondylosis (a deformity of the joint of two vertebrae where the space between the two adjacent vertebrae narrows and starts pressing on the nerves emerging from the spinal cord).  R. 81.  On September 9, 2002 Dr. Kowlowitz performed surgery on Mr. Raines consisting

---

[3]In the medical context, "insidious" means a disease that progresses with few or no symptoms to indicate its gravity.

of right L4 selective nerve root block, left L5 selective nerve root block, and epidurography with fluoroscopic-guided needle placement.  R. 80.

On October 31, 2002 Mr. Raines saw Dr. David H. Tharp.  Dr. Tharp noted that Mr. Raines moved about quite slowly and had difficulty changing positions, although his gait appeared to be normal.  R. 86.  He noted that Mr. Raines had diffuse tenderness throughout the lumbar area with no areas of focal tenderness. He further noted that there was no suggestion of a myofascial component on the exam, there were no motor deficits, and that "sensory appears to be intact bilaterally."  Dr. Tharp administered an epidural steroid injection to treat Mr. Raines' pain.  R. 87.

On November 13, 2002 Mr. Raines' spouse, Molly Raines, passed away. Mrs. Raines was a wage earner and was fully insured on November 13, 2002.  The ALJ determined that Mr. Raines met the non-disability requirements for disabled widowers' benefits.  R. 21.

On December 4, 2002 Mr. Raines saw Dr. Spangler about some chest pain. R. 279.  An echocardiogram exam revealed normal sized cardiac chambers and normal cardiac valves.  Dr. Spangler's impressions were that Mr. Raines had mild hypokinesis of the inferior wall of the left ventricle with preserved left ventricle systolic function with an EF (ejection fraction) of approximately 50%, trivial mitral regurgitation, and possible diastolic dysfunction of the left ventricle.

On December 16, 2002, Mr. Raines saw Dr. Preetham Jetty for chest pain. R. 244. Dr. Jetty reported no significant arrhythmias and an essentially negative electrocardiogram stress test. On January 24, 2003 Dr. Jetty performed a cardiac catheterization on Mr. Raines. The procedure revealed chronic total occlusion of the RCA (right coronary artery) with extensive left-to-right collaterals. (Collaterals are small arteries that connect two larger coronary arteries or different segments of the same artery. They are common in people with coronary heart disease or other blood vessel disease.) He noted only mild luminal irregularities and nonobstructive disease in the left coronary circulation. He recommended medical therapy, aggressive long-term risk factor modification, and atherosclerosis regression. (Atherosclerosis is the hardening and narrowing of the arteries. It is caused by the slow buildup of plaque on the inside of walls of the arteries.) A chest x-ray on January 28, 2003 was essentially normal, indicating clear lungs and a normal sized heart. R. 74.

Dr. Stephen Gatewood, another of Mr. Raines' treating physicians, wrote a letter on February 6, 2003 stating that Mr. Raines was permanently disabled. It is not clear from the record to whom the letter was addressed or for what purpose. The letter states, in its entirety:

> To whom it may concern,
> Michael Raines is unable to work for several reasons. He has severe degenerative back disease and is on narcotic medication for this. I have seen Michael on many occasions, and his overall ability to work has now diminished to the point that he is disabled. He has other problems, including fibromyalgia. In addition, he has coronary artery disease, recently

diagnosed by heart catheterization.  He is disabled, and I would consider this to be permanent.

R. 218.

On February 27, 2003 Dr. Wail Bakdash conducted a consultative examination of Mr. Raines.  R. 241-43.  Mr. Raines complained of chronic back pain.  He reported that he had four epidural injections without any relief.  He reported pain radiating to both legs but denied numbness, weakness, or tingling in his legs.  He walked with a slight limp to the right side.  Mr. Raines stated that he had constant migraines and took migraine tablets about nine times a month. His coronary artery disease was noted, as was obesity.

Dr. Bakdash's physical examination revealed that Mr. Raines could stand on his heels and toes without difficulty, that his spine was not tender, and that there was no effusion or inflammation of the joints.  R. 242.  His straight-leg raising was 45 degrees on the right and 75 degrees on the left.  His range of motion was normal in his spine and all extremities.  His strength was 5 out of 5 with no atrophy, rigidity, or muscle twitch.  His sensation to light touch was normal, and deep tendon reflexes were symmetric and normal.  He was able to grasp, lift, carry, and manipulate objects with both hands, and able to perform repeated movements with both feet.  He was able to sit and stand normally and he was able to bend over without restriction and to squat halfway.  He was able to get on and off the examination table without difficulties, his posture was

normal, and he had no ataxia (clumsy motion of the limbs or torso) or unsteadiness.   Dr. Bakdash's impressions were chronic back pain with no restriction of movement, migraines, obesity, and coronary artery disease.

On March 18, 2003 Dr. W. Bastnagel, a state agency reviewing physician, reviewed Mr. Raines' medical records and issued a report of his findings.  R. 233-40.  Dr. Bastnagel found that Mr. Raines could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and was unlimited in his ability to push and/or pull with his extremities.  He noted Mr. Raines' coronary artery disease and limping gait.  He concluded that Mr. Raines could occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds.  He further noted that Mr. Raines should avoid concentrated exposure to extreme heat and cold.   On April 18, 2003 Dr. F. Montoya, a state agency reviewing physician, reviewed Mr. Raines' medical records and affirmed the findings of Dr. Bastnagel.  R. 114, box 34.

On May 19, 2003, Mr. Raines visited Dr. Spangler.  R. 58-60.  Mr. Raines complained that his back popped when he picked something up and that the bones in his leg ached.  Dr. Spangler noted diarrhea, back pain, fibromyalgia, coronary artery disease, and "headache" as current problems.  He further noted that Mr Raines denied chest pain, palpitations, fainting, or shortness of breath.  His physical examination revealed that Mr. Raines was well nourished, well

hydrated, and in no acute distress.   He assessed Mr. Raines' back pain as deteriorated and his headache as unchanged.

On November 14, 2003 Dr. Spangler wrote in a "Statement of Medical Condition for the Food Stamp and Temporary Assistance for Needy Families Programs" that Mr. Raines was totally unable to work and that "he will never be able to work." R. 113. Dr. Spangler noted that the plaintiff had degenerative back disease, fibromyalgia, and coronary artery disease.  He did not refer to Mr. Raines' headaches or other alleged impairments.

Mr. Raines applied for a period of disability and disability insurance benefits on August 28, 2002.  R. 163.  On January 22, 2003 he amended his application to include a claim for disabled widower's benefits.  R. 178.  His claim was denied initially and upon reconsideration.  At his request, a hearing was held before Administrative Law Judge James R. Norris on June 2, 2004.

*Testimony at the Hearing*

During the hearing, Mr. Raines testified that he experienced excruciating back pain that sometimes shot down his legs.  R. 413-14.  He rated the severity of the pain as 10 out of 10.  R. 414.  Mr. Raines testified that he suffered from constant migraine headaches almost every day.  R. 415, 418.  He stated that sometime the headaches were "excruciating, blinding."  R. 418.  Mr. Raines also

testified that he experienced sharp, stabbing chest pains at least a dozen times a day.  R. 420.  He testified that he suffered from chronic diarrhea.  R. 416, 423-24.

Dr. Paul Boyce, a court-certified medical expert in internal medicine, evaluated Mr. Raines' medical record and testified at the hearing.  R. 412, 439.  Concerning Mr. Raines' back pain, Dr. Boyce testified that the medical record showed anatomical abnormalities with arthritis, some degenerative disc disease, and encroachment on nerve roots at L4-L5.  R. 441.  He noted that an orthopedic consultation found no motor deficits.  R. 86, 442.

Dr. Boyce acknowledged the evidence of Mr. Raines' chronic headaches discussed above, but noted that no organic cause was found for Mr. Raines' headaches.  R. 450-51.  He further noted that Dr. Finley had identified a "mixed group" and "potpourri" of different types of headaches from which Mr. Raines might have been suffering.  R. 448-51.  Dr. Boyce testified that there was no specific medical evidence in the record establishing the cause of Mr. Raines' diarrhea.  R. 452.

The AJL examined vocational expert Ray Burger and asked him to consider a hypothetical individual who was of Mr. Raines' age, education, and work experience, who was limited to light work free of climbing ladders, ropes or scaffolds, with only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of stairs, and who was incapable of concentrated exposure to heat,

cold, and noise.  R. 459-60.  The vocational expert testified that such an individual could perform a significant number of light jobs in the Indiana regional economy, including 19,355 cashier jobs, 2,301 sales counter clerk jobs, and 1,140 mail clerk jobs.  R. 460.  The ALJ then asked the vocational expert to assess how many of those jobs would remain if the hypothetical individual was able to maintain any position for a maximum of only 20 minutes at a time.  He responded that none of the jobs would be available to such an individual.  Mr. Raines' attorney asked the vocational expert  how many of the jobs would remain if the hypothetical individual had to take a break for 30 minutes a day due to pain.  He responded that none of the jobs would be available to such an individual.  The vocational expert also testified that none of the jobs would be available if the hypothetical individual had to miss more than 16 to 18 days a year.

*Procedural History*

The ALJ concluded that Mr. Raines was not disabled for purposes of the Social Security Act and issued his decision denying benefits on October 29, 2004.  The Appeals Council denied Mr. Raines' request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  Mr. Raines now seeks this court's review of the denial of his application.  The court has jurisdiction in the matter under 42 U.S.C. § 405(g).

*The Statutory Framework for Determining Disability*

To be eligible for disability insurance benefits, a claimant must establish that he suffers from a disability within the meaning of the Social Security Act. To prove disability under the Act, the claimant must show that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d). Mr. Raines was disabled only if his impairments were of such severity that he was unable to perform work that he had previously done and if, based on his age, education, and work experience, he also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to him. 42 U.S.C. § 423(d).

This standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

The implementing regulations for the Act provide the familiar five-step process to evaluate disability. The steps are:

(1)  Has the claimant engaged in substantial gainful activity?  If so, he was not disabled.

(2)  If not, did the claimant have an impairment or combination of impairments that are severe?  If not, he was not disabled.

(3)  If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant was disabled.

(4)  If not, could the claimant do his past relevant work?  If so, he was not disabled.

(5)  If not, could the claimant perform other work given his residual functional capacity, age, education, and experience? If so, then he was not disabled.  If not, he was disabled.

See generally 20 C.F.R. § 404.1520.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Applying the five-step process, the ALJ found that Mr. Raines satisfied step one because he had not engaged in substantial gainful activity since his alleged onset date of disability.  R. 28.  At step two, the ALJ found that Mr. Raines had severe impairments consisting of lumbar internal disc derangement of L4-L5, L5-S1 with lumbar spondylosis, and coronary artery disease.  The ALJ also found that Mr. Raines had "non-severe" impairments consisting of migraines with blurred vision, diarrhea, stomach pain, fibromyalgia, loss of balance, dropping things due to no strength, and depression.[4]  At step three, the ALJ found that Mr.

----

[4]Mr. Raines does not argue that he suffered any functional limitations due to a mental impairment.  He claims that the ALJ failed to consider his depression (continued...)

Raines failed to demonstrate that any of his impairments or combination of impairments met or equaled a listed impairment.  At step four, the ALJ found that Mr. Raines could not perform his past relevant work.  The ALJ then considered Mr. Raines' residual functional capacity at step five and found that, despite his severe impairments, he retained the residual functional capacity to perform light exertional work with no climbing of ladders, ropes, or scaffolds, with only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of stairs, and with no concentrated exposure to heat, cold, and noise.  The ALJ concluded that Mr. Raines was not under a disability, as defined by the Act, because there were a significant number of jobs in the national economy that Mr. Raines could perform.

## Standard of Review

"The standard of review in disability cases limits . . . the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria."  *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S.

---

[4](...continued)
in combination with his other impairments.  That issue is taken up in Part IV of this entry.  Similarly, Mr. Raines does not raise any issues relating to his coronary artery disease.

389, 401 (1971).  To determine whether substantial evidence exists, the court must "'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ." *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); see also *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).  The court must not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna*, 22 F.3d at 689.  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based a decision on serious factual mistakes or omissions.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).  This determination by the court requires that the ALJ's decision adequately discuss the relevant issues:   "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."   *Briscoe*, 425 F.3d at 351, citing *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994).  Although the ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005),

a remand may be required if the ALJ has failed to "build a logical bridge from the evidence to his conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

*Discussion*

Mr. Raines argues that the ALJ erred by (1) failing to give proper consideration to his headaches; (2) rejecting the opinions of two of his treating physicians; (3) equating his ability to do certain activities of daily living with the ability to engage in substantial gainful activity; and (4) failing to consider his impairments in combination.

I.    *Mr. Raines' Headaches*

Mr. Raines argues that the ALJ erred because he found that his headaches were "non-severe," did not take account of his headaches in determining his residual function capacity, did not include his headaches in the hypothetical question posed to the vocational expert, did not articulate at some minimal level his analysis of the headache evidence, and ignored the entire line of headache evidence that was contrary to his opinion.

The ALJ did not classify Mr. Raines' headaches as a severe impairment in step two of his analysis.  Mr. Raines argues that this was an error because his migraine headaches cannot be characterized as a "slight abnormality . . . that has

no more than a minimal effect on the ability to do basic work activities." See SSR 96-3p (describing "not severe" impairments).

Step two of the five-step process of evaluating disability requires a plaintiff to establish that he suffers from an impairment or combination of impairments that are severe. If the plaintiff does not establish that he has such an impairment, then the regulations direct a finding of not disabled. The plaintiff bears the burden at step two. *Young*, 362 F.3d at 1000; *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991). A claimant's burden at step two is not an onerous one. Step two is a threshold matter and the ALJ need not classify every alleged impairment as either "severe" or "not severe." Instead, if a plaintiff satisfies his burden of establishing that he suffers from any severe impairment, the ALJ simply must continue to step three of the analysis. At later stages, the ALJ evaluates a claimant's ability to work based on the totality of his impairments, whether they are deemed severe or not. See 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); SSR 96-8p. As long as the ALJ proceeds beyond step two, as in this case, no error could result solely from his failure to label an impairment as "severe." In fact, the ALJ's classification of an impairment as severe or non-severe is largely irrelevant past step two. What matters is that the ALJ considers the impact of all of the claimant's impairments – severe and non-severe – on his ability to work. The ALJ did not commit error in classifying Mr. Raines' headaches as non-severe.

The ALJ did not totally discredit or dismiss Mr. Raines' allegations concerning his headaches.  Instead, the ALJ considered Mr. Raines' testimony about his headaches and concluded that his subjective complaints of pain were not entirely credible and were not consistent with the medical evidence on record, and that his headaches did not significantly interfere with his ability to perform basic work activities.  R. 21-22, 26.

Social Security Ruling 96-7p describes the two-step analysis that the ALJ must perform in assessing subjective complaints of pain, such as headaches.  See 20 C.F.R. § 404.1529; SSR 96-7p.  First, the ALJ must determine whether "medically determinable physical or mental impairments" exist that could "reasonably be expected to produce the individual's pain or symptoms." § 404.1529; SSR 96-7p.  If the ALJ finds that no impairment could reasonably cause the symptoms, then no symptom can be a basis for a finding of disability, no matter how genuine the complaints appear to be.  SSR 96-7p.  If the ALJ finds "an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain," the ALJ's next step is to "make a specific finding on the credibility of the individual's statements based on a consideration of the entire case record," including the objective medical evidence, daily activities, characteristics of the symptoms, aggravating factors, medications, and treatments.  SSR 96-7p; see generally *Golembiewski*, 322 F.3d at 915-16.

In this case, the ALJ concluded that Mr. Raines failed to met his burden of providing sufficient evidence of a medically determinable impairment that could reasonably be expected to produce his headaches.  The ALJ noted that Dr. Boyce, the medical expert who testified at the hearing, stated that no organic cause was found for Mr. Raines' headaches by Dr. Finley, the neurologist who examined him. R. 21, 451.  Dr. Boyce testified that Dr. Finley instead found that Mr. Raines' headaches were most likely due to muscle tension or were rebound headaches. R 21, 449-50.  This is not an entirely precise recounting of what Dr. Finley stated in his report.  Dr. Finley stated that the most likely diagnosis of Mr. Raines' headaches was "mixed with element of cervicogenic headache." R. 293.  He added that there was a possible rebound headache component.  *Id.*  Dr. Finley then listed musculotension among several differential diagnoses.  *Id.*  The ALJ is correct, however, that no specific organic cause of Mr. Raines' headaches was identified by Dr. Finley.  Hence, the ALJ's conclusion that Mr. Raines  failed to meet his burden is supported by substantial evidence.  The only evidence Mr. Raines presented concerning the physical causes of his alleged migraines was Dr. Finley's report.  That report did little more than list a variety of different types of headaches that Mr. Raines might have been suffering from, along with a list of possible causes.

The ALJ also concluded that Mr. Raines' subjective allegations of pain, including his migraines, and functional limitations were not entirely credible.  R. 26.  An ALJ's credibility determination is entitled to considerable deference.

*Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Herron*, 19 F.3d at 335 ("Since the ALJ is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong."). Absent legal error, an ALJ's credibility finding will not be disturbed unless "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000); *Diaz*, 55 F.3d at 308. Nevertheless, the ALJ must explain adequately the reasons behind a credibility finding and must provide more than a conclusory statement that a claimant's allegations are not credible. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). The ALJ may not disregard a claimant's subjective complaints merely because they are not fully supported by objective medical evidence, *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995), but the ALJ may discount subjective complaints that are inconsistent with the evidence as a whole. *Id.*; 20 C.F.R. § 404.1529.

Further, an ALJ may not select and discuss only the evidence that favors his ultimate conclusion. The ALJ must minimally articulate reasons for rejecting or accepting specific evidence of disability so that a reviewing court can trace the path of the ALJ's reasoning. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). An ALJ may not ignore an entire line of evidence that is contrary to the ruling. See *Golembiewski*, 322 F.3d at 917 (remanding because ALJ improperly ignored three lines of evidence).

In this case, the ALJ's decision adhered to these principles.  First, no treating or consulting physician reported that Mr. Raines' headaches caused disabling functional limitations.  The ALJ cited Mr. Raines' daily activities as further evidence that his complaints of pain and functional loss were not fully credible.  He noted that Mr. Raines was able to care for his own personal needs independently and that he was able to drive, shop, wash dishes, do laundry, pull weeds, visit with friends, go out to eat occasionally, and read.  R. 21, 26.  In addition to discussing the medical evidence and Mr. Raines' activities of daily living, the ALJ also evaluated the testimony of Mr. Raines' ex-wife and sister.  R. 26.  The ALJ described their testimony about Mr. Raines' headaches and other impairments and considered these impairments in combination when he concluded specifically that "these problems are not fully consistent with the medical record and are not sufficient to keep him from working at the level assessed in this decision." *Id.*

Despite the ALJ's finding that there was no organic cause of Mr. Raines' headaches and his finding that his subjective allegations of pain and functional limitations were not entirely credible, the ALJ's residual functional capacity did in fact include limitations based on Mr. Raines' headaches.  The ALJ included those limitations in his hypothetical question to the vocational expert, assuming that the hypothetical individual would be incapable of concentrated exposure to heat, cold, and noise.  R. 459-60.  These limitations specifically addressed Mr. Raines' complaints of headaches.  R. 456.

Thus, the ALJ did not ignore an entire line of evidence concerning Mr. Raines' headaches. The ALJ articulated at an acceptable level his analysis of the headache evidence, accounted for Mr. Raines' headaches in his residual functional capacity, and included limitations related to his headaches in the hypothetical question to the vocational expert. The ALJ did not err in his evaluation of Mr. Raines' headaches.

II.    *The Opinions of Treating Physicians*

Mr. Raines argues that the ALJ erred in rejecting the opinions of Dr. Gatewood and Dr. Spangler, two of Mr. Raines' treating physicians. A treating physician's opinion regarding the nature and severity of a claimant's medical condition is entitled to controlling weight if well-supported by medically acceptable techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). An ALJ may discount a treating source's opinion if it is inconsistent with the opinion of a consulting physician or if the treating source's opinion is internally inconsistent, as long as the ALJ "minimally articulates his reasons for crediting or rejecting evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

A physician's opinion is a statement from an acceptable medical source that reflects a judgment about the nature and severity of a claimant's impairments and resulting limitations. 20 C.F.R. § 404.1527(a)(2). Such opinions must be distinguished from other medical evidence such as symptoms, signs, and laboratory findings. 20 C.F.R. § 404.1528; see *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993). A statement from a physician about what a claimant can still do and whether the claimant is disabled is "medical opinion" evidence that an ALJ must consider together with all of the other relevant evidence when assessing an individual's residual functional capacity. See SSR 96-5p. However, a "medical source statement must not be equated with the administrative finding known as the [residual functional capacity] assessment." *Id.* The residual functional capacity determination is a legal decision rather than a medical one. See 20 C.F.R. § 404.1527(e); SSR 96-5p; 61 Fed. Reg. 34471, 34472 (1996); *Diaz*, 55 F.3d at 306, n.2. The determination of a claimant's residual functional capacity is reserved to the ALJ. See 20 C.F.R. § 404.1546; *Prince v. Sullivan*, 933 F.2d 598, 602-03 (7th Cir. 1991).

Dr. Gatewood's February 6, 2003 letter concluded with his opinion that Mr. Raines' "overall ability to work has now diminished to the point that he is disabled" and that he considered this disability "permanent." R. 218. He listed degenerative back disease as the primary reason for this, but also noted that Mr. Raines suffered from fibromyalgia and coronary artery disease. He did not list Mr. Raines' headaches or any other impairment as contributing to his opinion.

The ALJ disagreed with Dr. Gatewood's conclusion.  He noted that Dr. Gatewood's letter was written prior to the consultative examination by Dr. Bakdash on February 27, 2003.  Contrary to Dr. Gatewood's conclusion, Dr. Bakdash found that Mr. Raines had few, if any, physical limitations.  See R. 241-43.  Dr. Bakdash acknowledged Mr. Raines' chronic back pain, but nevertheless concluded that he did "not have restriction of movement." R. 242.  Dr. Gatewood's opinion of disability was conclusory and did not refer to any objective medical findings.

Dr. Spangler's November 14, 2003 opinion that Mr. Raines would "never be able to work" was also conclusory and did not refer to any objective medical findings.  See R. 113.  There is no support in Dr. Spangler's prior medical reports for his conclusion of total disability.  His December 4, 2002 report noted some chest pain but normal sized cardiac chambers and normal cardiac valves, and did not mention any functional limitations.  See R. 279.  His May 19, 2003 report similarly did not discuss any functional limitations and noted that Mr. Raines was well nourished, well hydrated, and in no acute distress.  See R. 58-60.  He denied chest pains, palpitations, fainting, or shortness of breath.  R. 59.  Although Mr. Raines had some lumbar tenderness, Dr. Spangler did not note any neurological deficits.  *Id.*

Dr. Spangler's and Dr. Gatewood's opinions were based in large part on Mr. Raines' subjective complaints of disabling limitations.  The ALJ found that those

subjective complaints were not entirely credible.  "An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations."  *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001), citing *Diaz*, 55 F.3d at 308; *Butera*, 173 F.3d at 1057 (ALJ properly discounted physician's opinion in part because it was based on plaintiff's complaints).

The ALJ did not err in concluding that the opinions of state agency reviewing physicians Dr. Bastnagel and Dr. Montoya were entitled to greater weight than those of Dr. Spangler or Dr. Gatewood.  In March 2003, Dr. Bastnagel found that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and was unlimited in his ability to push and/or pull with his extremities.  R. 234.  Because his opinion was consistent with the objective and clinical medical evidence of record, the ALJ reasonably gave Dr. Bastnagel's opinion greater weight.  Dr. Bastnagel's opinion provided substantial evidence in support of the ALJ's decision.  Dr. Bastnagel's opinion of Mr. Raines' functional capabilities was affirmed by Dr. Montoya and was fully consistent with the opinion of medical expert Dr. Boyce.

Dr. Boyce thoroughly evaluated Mr. Raines' conditions, including back, abdominal and chest pain, headaches, arthritis, diarrhea, and dropping things. R. 440-41.  He found no specific medical cause in the record for Mr. Raines' migraines or chronic diarrhea.  R. 450-51, 452.  Dr. Boyce testified that an

orthopedic consultation found no motor deficits.  R. 86, 442.  Dr. Boyce testified that a work restriction to avoid concentrated exposure to cold or noise would be suitable for someone who has chronic headaches.  R. 456.  The ALJ noted that "Dr. Boyce agreed with the residual functional capacity as determined in this decision."  R. 23.  Dr. Boyce's opinion was consistent with the residual functional capacity findings of Dr. Bastnagel and Dr. Montoya.

Substantial evidence supports the ALJ's assessment that Dr. Boyce's opinion was based on more objective evidence than Dr. Gatewood's and Dr. Spangler's.  The ALJ reasonably concluded that Dr. Boyce's opinion thus deserved greater weight than the opinions of Dr. Gatewood and Dr. Spangler, and this conclusion is supported by substantial evidence.  The ALJ did not err in largely rejecting the conclusory opinions of Mr. Raines' treating physicians.  The ALJ's opinion as a whole provided ample explanation of his reasons for rejecting their opinions.

III.    *Activities of Daily Living*

Mr. Raines argues that the ALJ erred in equating his ability to do certain activities of daily living with the ability to engage in substantial gainful activity.  Minimal daily activities alone will not support a finding that a person is capable of "substantial physical activity."  *Clifford*, 227 F.3d at 872.  However, an ALJ commits error only when he relies upon those minimal daily activities as the sole basis for his decision without examining the objective medical evidence as a

whole.  *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002).  In *Johansen*, the Seventh Circuit doubted whether the claimant's daily activities of exercise, grocery shopping, doing laundry, driving a car, and walking one mile every day qualified as truly "minimal," but went on to say that "even assuming that Johansen's activities can be characterized as minimal, the ALJ's decision adequately explained how Johansen's allegation that he could not perform light work was inconsistent with the record viewed as a whole."  *Id.*

Here, the ALJ noted that Mr. Raines was able to care for his own personal needs independently and that he was able to drive, shop, wash dishes, do laundry, pull weeds, visit with friends, go out to eat occasionally, and read.  R. 21, 26.  The ALJ also found, as discussed above, that neither the medical evidence nor Mr. Raines' daily activities  supported a conclusion that Mr. Raines was too disabled to work with the stated restrictions.  In short, the ALJ did not merely equate Mr. Raines' ability to do certain activities of daily living with the ability to engage in substantial gainful activity, but instead considered Mr. Raines' daily activities in conjunction with the entire medical record.  The ALJ's articulated reasons for not fully crediting Ms. Raines' testimony about his limitations were sufficient, in light of his discussion throughout the decision of the full range of medical and other evidence.

IV.    *The Combined Effect of Mr. Raines' Impairments*

Mr. Raines argues that the ALJ erred because he did not give adequate consideration to the combined effects of all of his impairments, including his obesity, depression, and diarrhea.  In assessing a claimant's residual functional capacity, an ALJ is required to consider the combined effect of all of the claimant's impairments, including non-severe impairments.  See 20 C.F.R. § 404.1523[5]; *Golembiewski*, 322 F.3d at 918; SSR 96-8p (recognizing that non-severe impairments, when considered together with limitations and restrictions due to other impairments, may be critical to the outcome of a claim).  However, the ALJ does not have to "use terminology such as 'combined' or 'combination' in analyzing the claimant's impairments, but the reviewing court must be able to determine that the ALJ did in fact consider the combined effect of a claimant's impairments." *Mansfield v. Barnhart*, 2005 WL 1476370, at *9 (S.D. Ind. 2005), quoting *Corey v. Barnhart*, 2002 WL 663130 (S.D. Ind. 2002); see *Loy v. Sec'y of Health & Human*

───────────────

[5]Section 404.1523, which discusses "multiple impairments," provides in its entirety:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

*Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990); *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987).

The ALJ acknowledged that obesity was a prior secondary diagnosis of Mr. Raines but did not discuss it further.  R. 20.  Mr. Raines presented no evidence that his  obesity contributed to his functional limitations.  The ALJ thoroughly questioned Mr. Raines during his administrative hearing concerning his impairments, asking about his "worse problem" and following up by asking whether Mr. Raines had "any other medical conditions" that were bothering him besides his back pain.  R. 415.  The Commissioner rightly points out that although Mr. Raines described approximately eight other problems that he had, at no time during the hearing did he mention obesity as a condition, symptom, or concern.  Neither his sister nor ex-wife testified in any way as to his obesity.

In *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004), the court affirmed the ALJ's residual functional capacity finding despite the ALJ's failure to consider the claimant's obesity.  The claimant had not specified how his obesity further impaired his ability to work, but merely had speculated that his weight made it more difficult for him to stand and walk.  Here too Mr. Raines has failed to explain how his obesity caused limitations not accounted for by the ALJ's residual functional capacity determination.  The ALJ did not err in his minimal treatment of Mr. Raines' obesity.

The ALJ gave full treatment to Mr. Raines' depression and diarrhea.  R. 21-22.  He concluded that the impairments were non-severe.  The ALJ considered the combination of Mr. Raines' impairments when he evaluated the testimony of Mr. Raines' sister and ex-wife.  He noted that they testified about Mr. Raines' leg "giving out" and about dropping things, headaches, back pain, diarrhea, and chest pain.  R. 26.  The ALJ considered these impairments in combination when he concluded that "these problems are not fully consistent with the medical record and are not sufficient to keep him from working at the level assessed in this decision."  *Id.*  The ALJ further stated that "the claimant's allegations of pain, *other symptoms,* and functional limitations are not entirely credible."  *Id.* (emphasis added).  At step three, the ALJ found that Mr. Raines did "not have an impairment or combination of severe impairments listed in, or medically equal to [a listed impairment]."  R. 28; see *Gooch,* 833 F.2d at 591-92 (ALJ considered claimant's impairments in combination when he referred to "a combination of impairments" in finding that the claimant did not meet the requirements of a listed impairment).  In sum, the ALJ adequately considered Mr. Raines' impairments in combination.

*Conclusion*

The Commissioner's decision is affirmed.  Final judgment will be entered accordingly.

So ordered.

Date: April 23, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Hamer
tom@tomhamerlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov